UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWARD DUNCAN BECKLES, SR.,

                    Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

DECISION & ORDER

18-CV-321P

## PRELIMINARY STATEMENT

Plaintiff Edward Duncan Beckles, Sr. ("Beckles") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket ## 6, 20).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 13, 18). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Beckles's motion for judgment on the pleadings is denied.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

3

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. **Beckles's Contentions**

Beckles contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 13, 19). First, Beckles maintains that the ALJ improperly weighed the opinion of the consultative internal medicine examiner. (Docket # 13-1 at 9-11). Second, Beckles maintains that the ALJ's credibility analysis was flawed. (*Id.* at 11-13).

## III. **Analysis**

### A. **The ALJ's RFC Assessment**

I turn first to Beckles's challenge to the ALJ's RFC assessment on the grounds that she did not properly weigh the consultative examiner's opinion. Specifically, Beckles maintains that the RFC finding was "not supported by any medical opinion evidence" because the ALJ "gave . . . only 'partial' weight" to the consultative medical opinion of Donna Miller ("Miller"), DO, which was the sole medical opinion in the record related to Beckles's physical limitations. (*Id.* at 9). Beckles contends that the ALJ essentially "rejected" this opinion and reached the RFC assessment based on her own lay opinion. (*Id.*).

4

Beckles further argues that, in any event, Miller's opinion was "too vague" for the ALJ to rely upon because Miller used the term "mild" to describe certain functional limitations. (*Id.* at 9-10). Beckles also asserts that Miller's opinion was "too stale" because it was "almost *three years old* when the ALJ issued her decision on March 16, 2017." (*Id.* at 10 (emphasis in original)). Finally, Beckles contends that the ALJ "failed to provide any detailed discussion of how she arrived at each limitation in the RFC." (*Id.* at 11).

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order). An ALJ should also consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d))[1].

Here, the ALJ found that Beckles had the following severe impairments: diabetes with insulin pump use, diabetic neuropathy, thyroid disorder, knee arthritis, and lumbar spine

---

[1] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

disorder. (Tr. 12).² The ALJ determined that Beckles retained the RFC to perform a full range of sedentary work, except that Beckles was "precluded from all ladders, ropes, and scaffolds climbing, and [was] limited to occasional postural motions otherwise." (Tr. 14). The ALJ also stated that Beckles "must avoid all exposure to dangerous work hazards (unprotected heights and exposed moving machinery), and to extreme heat, humidity, and cold." (*Id.*). Finally, the ALJ limited Beckles to "detailed, but not complex, work tasks not involving a fast assembly quota pace." (*Id.*).

In reaching this RFC determination, the ALJ relied in part on Miller's May 21, 2014 internal medicine examination of Beckles. (Tr. 366-69). At that examination, Beckles reported that he had diabetes, osteoarthritis, low back pain, and hypothyroidism, but denied "any diabetic retinopathy, neuropathy, or nephropathy." (Tr. 366). Beckles stated that "cold, damp weather increase[d]" his osteoarthritis in his knee and that his low back pain increased "when his blood sugars bec[ame] abnormal." (*Id.*).

Miller noted upon examination that Beckles "appeared to be in no acute distress." (Tr. 367). Beckles's gait and stance were normal, he could fully squat, he used no assistive devices, needed no help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. (*Id.*). As it related to Beckles's musculoskeletal examination, Miller reported that Beckles's cervical spine showed full flexion, extension lateral flexion bilaterally, and full rotary movement bilaterally. (Tr. 368). Beckles's thoracic spine contained no signs of scoliosis, kyphosis, or abnormality. (*Id.*). His lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*). Miller noted that straight leg tests were negative bilaterally, and that Beckles had full

---

² References to page numbers in the Administrative Transcript (Docket # 8) utilize the internal Bates-stamped pagination assigned by the parties.

6

range of motion in his shoulders, elbows, forearms, and wrists bilaterally, as well as in his hips, knees, and ankles bilaterally. (*Id.*). Beckles's joints were also stable and nontender. (*Id.*). Miller also reported that Beckles had no muscle atrophy in his extremities, and his hand and finger dexterity were intact, with 5/5 grip strength bilaterally. (Tr. 369). In terms of activities of daily living, Beckles stated that he cooked once a week, but denied doing any cleaning or laundry. (Tr. 367).[3] He also took care of his children daily, showered four times a week, dressed daily, and enjoyed watching television, listening to the radio, and reading. (*Id.*).

Miller's opinion also incorporated her review of Beckles's lumbosacral spine x-ray completed by Lawrence S. Liebman ("Liebman"), MD, on May 21, 2014.[4] Liebman opined that Beckles's spine showed "relatively well maintained" height of the vertebral bodies and intervertebral disc spaces, and "intact" pedicles "throughout." (Tr. 370). Liebman noted "transitional L5 vertebral body," but "[o]therwise unremarkable study." (*Id.*).

Based upon her examination of Beckles, as well as her review of Liebman's x-ray interpretation, Miller opined that Beckles's prognosis was "stable" and that he had "mild limitation for heavy lifting, bending, carrying, and repetitive kneeling and squatting." (Tr. 369). The ALJ afforded Miller's opinion "partial weight," noting that "[w]hile her opinion is generally consistent with the nature of her exam findings, the mild limitations identified do[] not appear to

---

[3] Beckles reported somewhat different activities of daily living during his intelligence evaluation and psychiatric evaluation, both of which were conducted by Susan Santarpia ("Santarpia"), PhD, on May 21, 2014. (*See* Tr. 357-60, 361-64). At that time, Beckles reported that he was able to do "light cooking, cleaning, and shopping" and was interested in reading, playing guitar and keyboard, and photography. (Tr. 359, 363). Santarpia opined that Beckles's adaptive functioning was within normal limits for communication, self-care, social, community, self-direction, health and safety, academics, home living, leisure, and work. (*Id.*).

[4] This x-ray was performed the same day as Miller's internal medicine examination of Beckles (*compare* Tr. 366 *with* Tr. 370), and Liebman's interpretation of the lumbosacral spine x-ray was completed on May 27, 2014 (Tr. 370). In Miller's written opinion, under the heading "labs and other testing," she initially noted "[n]one pending." (Tr. 369). That notation appears to have been crossed out and amended by hand to reflect Liebman's interpretation of Beckles's lumbosacral spine x-ray. (*Id.*). Therefore, it is apparent that Miller reviewed Liebman's interpretation and incorporated it into her opinion.

7

take into account [Beckles's] diabetic disorder, which would not reflect orthopedic limitations." (Tr. 17).

Turning to Beckles's first challenge, I reject the contention that the ALJ reached her RFC determination without relying on a medical opinion and thus based it on her own lay interpretation of the medical evidence. (*See* Docket # 13-1 at 9). Initially, I disagree that the ALJ "rejected" Miller's opinion because the ALJ gave it "partial weight." The ALJ's RFC determination clearly incorporated the "mild limitation[s]" opined by Miller "for heavy lifting, bending, carrying, and repetitive kneeling and squatting," which is demonstrated by the ALJ limiting Beckles to sedentary work, precluding him from "all ladders, ropes, and scaffolds climbing," and further limiting him to only "occasional postural motions otherwise." (Tr. 14). *See, e.g.*, *Heidrich v. Berryhill*, 312 F. Supp. 3d 371, 374 n.2 (W.D.N.Y. 2018) ("postural limitations of moderate or lesser severity are generally considered consistent with the demands of light work"); *Gurney v. Colvin*, 2016 WL 805405, *3 (W.D.N.Y. 2016) (finding that moderate limitations with respect to "repetitive heavy lifting, bending, reaching, pushing, pulling or carrying . . . are frequently found to be consistent with an RFC for a full range of light work") (collecting cases); *Dombert v. Astrue*, 2010 WL 4878952, *5 (W.D.N.Y. 2010) ("[s]edentary work is defined as work that involves sitting, with occasional standing or walking, lifting no more than 10 pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers, and small tools") (citing 20 C.F.R. § 404.1567(a)). An ALJ does not necessarily "reject" opinion evidence when the opinion is assessed less than controlling weight and where, as here, it is evident that the ALJ's RFC determination incorporates limitations contained in that opinion.[5] *See, e.g.*, *Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *3 (W.D.N.Y. 2019)

---

[5] Irrespective of the terminology used by the ALJ, whether it be "little weight," "some weight," or "no weight," the relevant inquiry is whether the ALJ incorporates or accounts for any of the limitations assessed by the

("[c]ontrary to [claimant's] assertion, the ALJ did not wholly reject [the doctors'] opinions; instead, she afforded them 'partial' and 'some' weight and . . . relied on portions of them to determine [claimant's] RFC[;] . . . [j]ust because the ALJ did not afford either [doctor's] opinion controlling weight does not mean that she substituted her own view of the medical evidence for those opinions"); *see also Harris v. Berryhill*, 2017 WL 4112022, *3 (W.D.N.Y. 2017) ("[p]laintiff contends that the ALJ improperly 'rejected' [doctors'] opinions [which the ALJ afforded 'less than significant weight'] without citing to another medical opinion[;] [p]laintiff overstates the ALJ's actions[;] [t]he ALJ did not 'reject' these opinions[;] [t]o the contrary, he gave them some weight and incorporated certain of the limitations set forth therein into his RFC finding"); *Bockeno v. Comm'r of Soc. Sec.*, 2015 WL 5512348, *5 (N.D.N.Y. 2015) ("the ALJ did not outright reject [doctor's] opinion, but afforded his opinion 'little weight'[;] [t]he ALJ's RFC determination includes non-exertional mental limitations, some of which are consistent with the limitations imposed by [doctor] and supported by other medical evidence in the record").

---

medical professional in the RFC, as opposed to basing the RFC upon his or her own lay interpretation of the medical evidence. *Compare Freeman v. Comm'r of Soc. Sec.*, 2019 WL 2016585, *4 (W.D.N.Y. 2019) (RFC not supported by substantial evidence where ALJ gave "little weight" to the only medical opinion of record and failed to account for resting and lifting limitations assessed in the opinion); *Nanartowich v. Comm'r of Soc. Sec. Admin.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (ALJ's discounting of only medical opinions of record created evidentiary gap in the record; "the ALJ explicitly accorded 'little weight' to the opinions [of the physicians], . . . and nothing suggests that the ALJ accounted for the limitations identified by these physicians in formulating the RFC"); *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) ("[a]fter discounting the opinions, the ALJ determined that [plaintiff] retained the physical RFC to perform the full range of light work[;] . . . it is unclear how the ALJ arrived at this RFC or which impairments he considered in formulating his assessment"); *Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014) (RFC not supported by substantial evidence where "[a]fter discounting [the physician's] opinion," the ALJ formulated the RFC "through her own interpretation of various MRIs and x-ray reports contained in the treatment records"); *with Burch v. Comm'r of Soc. Sec.*, 2019 WL 922912, * 6 (W.D.N.Y. 2019) ("[a]lthough the ALJ accorded limited weight to both opinions, her RFC assessment nonetheless accounts for the majority of the limitations assessed by both doctors"); *Harrington v. Colvin*, 2015 WL 790756, *17 (W.D.N.Y. 2015) (same); *Crawford v. Astrue*, 2014 WL 4829544, *21 (W.D.N.Y. 2014) ("the ALJ's RFC assessment adopted the limitations assessed by [the physician] that were supported by the evidence and . . . his decision to afford [the physician] limited weight did not create a gap in the record").

Moreover, the ALJ's RFC assessment demonstrates that she ultimately assessed greater limitations than those opined by Miller. (Tr. 14). In the ALJ's view, Miller's opinion deserved less than controlling weight because it did "not appear to take into account [Beckles's] diabetic disorder," and did not reflect Beckles's "orthopedic limitations" – limitations which the ALJ took into account. (Tr. 17). The ALJ did not err in discounting Miller's opinion on this basis or by including greater limitations in her RFC determination than those opined by Miller. *See*, *e.g.*, *Catalfamo v. Berryhill*, 2019 WL 1128838, *2 (W.D.N.Y. 2019) (rejecting argument that ALJ improperly substituted his own lay opinion where ALJ gave "little weight" to two medical opinions and "imposed more restrictions than th[ose] two opinions suggested were necessary"); *Glab v. Comm'r of Soc. Sec.*, 2018 WL 3422062, *3 (W.D.N.Y. 2018) (ALJ did not err in "affording some weight to Dr. Miller's opinion in assessing [p]laintiff's RFC" where opinion was "fairly consistent with the overall medical evidence of record . . . [but] did not account for [p]laintiff's need to change positions periodically and avoid certain postural activities"; "[t]he fact that the ALJ's RFC conclusion was more restrictive in some aspects than Dr. Miller's opinion . . . does not establish that the ALJ was relying on his own lay opinion"); *Baker o/b/o Baker v. Berryhill*, 2018 WL 1173782, *2 (W.D.N.Y. 2018) ("[w]here an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand") (emphasis in original).

Here, the ALJ did not completely reject Miller's medical opinion; rather, she incorporated Miller's assessed limitations and also included greater limitations than opined by Miller. I find that the ALJ's RFC determination is supported by medical opinion evidence and is not the product of the ALJ's own lay interpretation of the medical evidence. *See Glab v. Comm'r of Soc. Sec.*, 2018 WL 3422062 at *3 ("[i]t is well-established that the opinion of a

consultative examiner can constitute substantial evidence supporting an ALJ's decision")
(citation and quotations omitted). Therefore, I find that remand is not warranted on this basis.

I likewise reject Beckles's argument that Miller's opinion was "too vague" for the ALJ to rely upon because Miller characterized Beckles's limitations as "mild." (*See* Docket # 13-1 at 9-10). In Beckles's estimation, Miller's opinion was "so vague as to be essentially useless." (*Id.* at 9). I disagree.

To be sure, "[a]n expert's opinion can be deemed 'not substantial' when the expert describes the claimant's impairments in terms which are 'so vague as to render it useless in evaluating' [p]laintiff's RFC." *Mancuso v. Colvin*, 2013 WL 3324006, *3 (W.D.N.Y. 2013) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128-29 (2d Cir. 2008)). In other words, an expert's opinion that uses vague phrases may not constitute substantial evidence to support an RFC determination when it is "accompanied by no additional information, [and thus] prevent[s] the ALJ, as a layperson, from being able to make the necessary inference whether [p]laintiff can perform the particular requirements of a specified type of work." *See id.* Contrary to Beckles's contentions, however, the use of phrases such as "moderate" or "mild" by a consultative examiner does not automatically render the opinion impermissibly vague. *See Dier v. Colvin*, 2014 WL 2931400, *4 (W.D.N.Y. 2014) ("while the treating physician and consultative examiner used terms like 'mild' and 'moderate[,]' this does not automatically render their opinions void for vagueness"); *Tudor v. Comm'r of Soc. Sec.*, 2013 WL 4500754, *12 (E.D.N.Y. 2013) ("[c]ontrary to plaintiff's contentions, the 'mere use of the phrase 'moderate limitations' does not render [a doctor's] opinion vague or non-substantial for purposes of the ALJ's RFC determination'") (quoting *Mancuso v. Colvin*, 2013 WL 3324006 at *4). Instead, when "those opinions are based on clinical findings and an examination of the claimant, the conclusion can

11

serve as an adequate basis for the ALJ's ultimate conclusion." *Dier v. Colvin*, 2014 WL 2931400 at *4 (quotations omitted).

In this case, Miller's opinion that Beckles had "mild limitation for heavy lifting, bending carrying, and repetitive kneeling and squatting" was based upon her interview and physical examination of Beckles, as well as her review of Liebman's interpretation of Beckles's spine x-ray. As detailed at length above, the examination yielded largely unremarkable results, and Miller's prognosis for Beckles was stable, which was supported in part by Beckles's spinal x-ray revealing "transitional L5 vertebral body," but an "[o]therwise unremarkable study." (Tr. 366-70). In other words, Miller's opinion concerning Beckles's "mild" limitations was based upon medical examination, evaluation and observation, as well as objective x-ray results. In these circumstances, the ALJ properly relied upon Miller's opinion to support her RFC assessment. *See*, *e.g.*, *Taylor v. Comm'r of Soc. Sec.*, 2019 WL 457718, *4 (W.D.N.Y. 2019) ("[a]dditionally, [consultative examiner's] use of the term 'moderate' in this assessment is not vague[;] . . . [consultative examiner's] opinion of 'moderate' limitations does not stand alone[;] [i]t is based on the objective MRI results and the in-person physical examination of the [p]laintiff"); *Tudor v. Comm'r of Soc. Sec.*, 2013 WL 4500754 at *12 ("[because the doctor's] opinion was supported by 'additional information,' i.e., objective medical findings, her opinion is not vague and provided an adequate basis for the ALJ to infer that plaintiff is capable of performing the exertional requirements of sedentary work"); *Mancuso*, 2013 WL 3324006 at *4 ("[a]s the challenged sentence of [the doctor's] report is based on the aforementioned observations, which were made pursuant to valid medical tests, . . . [the doctor's] opinion constitutes valid, substantial medical evidence which the ALJ properly utilized when

determining [p]laintiff's mental RFC[;] [t]herefore, the ALJ's . . . RFC determination was supported by substantial evidence").

Equally without merit is Beckles's contention that Miller's opinion was stale by the time the ALJ rendered her decision. (*See* Docket # 13-1 at 10). Beckles's argument focuses entirely on the passage of time between Miller's opinion and the date of the ALJ's decision. However, "[t]he mere passage of time does not render an opinion stale[;] [i]nstead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Whitehurst v. Berryhill*, 2018 WL 3868721, *4 (W.D.N.Y. 2018); *accord Best v. Berryhill*, 2019 WL 1146341, *3 (W.D.N.Y. 2019) ("[t]he relevant issue is whether plaintiff's condition deteriorated during th[e] period [at issue]"). Beckles does not point to any record evidence demonstrating that his condition deteriorated during the relevant period.[6] (*See generally* Docket # 13-1 at 10). On that basis, I reject Beckles's argument. *See Liberatore v. Colvin*, 2016 WL 7053443, *7 (N.D.N.Y. 2016) ("the timeliness of evidence is merely a factor that courts have cited in finding a lack of substantial evidence in the record, and does not necessarily compel rejection of a particular piece of evidence or the ALJ's finding relying thereon . . . [;] [p]laintiff does not identify any evidence suggesting that [doctor's] mental RFC assessment would have been different if he had occasion to consider the evidence that postdated his assessment, and [p]laintiff does not argue that [doctor's] mental RFC assessment was inconsistent with the record evidence that [doctor] did review") (emphasis and quotations omitted); *see also Townsend v. Comm'r of Soc. Sec.*, 2018 WL 6697001, *5 (W.D.N.Y. 2018) (rejecting argument that consultative examiner's opinion was stale; "the record does not suggest that [claimant's] condition deteriorated after [consultative examiner] rendered his opinion and,

---

[6] Indeed, Beckles does not cite to any medical record evidence at all in support of this contention and cites to very little in the entirety of his four and one-half page argument section. (*See* Docket # 13-1 at 9-13).

13

aside from [claimant's single sentence arguing otherwise], [claimant] does not argue or point to evidence demonstrating that her condition worsened"); *Wilson v. Comm'r of Soc. Sec.*, 2018 WL 4901070, *4 (W.D.N.Y. 2018) ("the record does not suggest, and [claimant] does not argue, that her condition deteriorated after [doctor] rendered his opinion").

In any event, the ALJ considered evidence post-dating Miller's opinion. For instance, the ALJ noted that Beckles began treatment for "diabetic neuropathy, and reported an inability to complete a nerve conduction study secondary to pain symptoms." (Tr. 16 (citing Tr. 458, 461)). The ALJ also noted, however, that "treating sources have noted [treatment] noncompliance[, and] [Beckles's] most recent treatment notes do not indicate any worsening consistent with [Beckles's] reported degree of functional restrictions or pain." (*Id.* (citing Tr. 502)). Moreover, the ALJ specifically noted that Beckles's hypothyroidism and uncontrolled type-I diabetes (conditions which Miller considered) could have been the cause of his reported "deficits in attention, concentration and focus, as well as dizziness and balance abnormalities" (Tr. 16) and observed that her RFC determination "account[ed] for the greatest degrees of restriction [Beckles] may experience due to hypothyroidism along with his other severe impairments." (*Id.*). Beckles does not argue that additional limitations were necessary, and I find that the ALJ's RFC assessment adequately accounted for Beckles's conditions. *See*, *e.g.*, *Kidd v. Comm'r of Soc. Sec.*, 2019 WL 1260750, *4 (W.D.N.Y. 2019) ("[t]here is no evidence that the RFC determination does not adequately account for [claimant's severe impairments], and [claimant] does not suggest that any specific additional limitations were warranted").

Finally, I reject Beckles's argument that ALJ failed to explain how she arrived at the RFC assessment. (*See* Docket # 13-1 at 11). As explained above, the ALJ did not completely reject Miller's opinion and did not arrive at the RFC using her own lay judgment.

14

Moreover, in the Court's view, the ALJ "explain[ed] the bases for h[er] findings with sufficient specificity to permit meaningful review." *Sewar v. Berryhill*, 2018 WL 3569934, *2 (W.D.N.Y. 2018). First, the ALJ explained that she limited Beckles to "detailed, but not complex, work tasks not involving a fast assembly quota pace" due to Beckles's symptoms of depression and his hypothyroidism-associated deficits in attention, concentration, and focus. (Tr. 15-16). Second, the ALJ also explained that she limited Beckles to sedentary work and precluded Beckles from climbing ladders, ropes or scaffolds because of Beckles's symptoms of "dizziness and balance abnormalities" associated with hypothyroidism and "other severe impairments." (Tr. 16).

Moreover, the ALJ's inclusion of postural movement limitations were associated with Beckles's diabetic neuropathy impairment, which the ALJ recognized "may account for some of [Beckles's] pain-related limitations" and contributed to "a combination of impairments that could cause residual restrictions." (Tr. 16-17). Finally, "[i]n the interests of safety," the ALJ precluded Beckles from "exposure to dangerous work hazards (unprotected heights and exposed moving machinery)" and, "[t]o prevent pain exacerbation," precluded Beckles from exposure to "extreme heat, humidity and cold conditions." (Tr. 17). The limitations related to extreme heat, humidity, and cold, were consistent with Beckles's hearing testimony and self-report during Miller's examination. (*See* Tr. 43 (hearing testimony during which Beckles testified that his diabetic neuropathy pain increased more "in the winter than regular seasons"); Tr. 366 (Beckles reported to Miller that his osteoarthritis pain increases with "cold, damp weather")).

On this record, the ALJ adequately explained how she arrived at her RFC assessment, which was supported by medical evidence in the record, as well as Beckles's own testimony. Therefore, remand is not warranted on this basis.

### B. The ALJ's Credibility Assessment

I turn next to Beckles's contention that the ALJ's credibility analysis was flawed because she failed to "conduct any meaningful analysis of the credibility factors." (Docket # 13-1 at 12-13). For the reasons explained below, Beckles's credibility challenge is without merit.

An ALJ's credibility assessment should reflect a two-step analysis. *Robins v. Astrue*, 2011 WL 2446371, *4 (E.D.N.Y. 2011). First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptom. *Id.* (citing 20 C.F.R. § 404.1529). Next, the ALJ must evaluate "the intensity, persistence and limiting effects of the symptom, which requires a credibility assessment based on the entire case record." *Id.* (citing 20 C.F.R. § 404.1529(c)). The relevant factors for the ALJ to weigh include:

> (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate [his] pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of [his] pain or other symptoms; (6) any measures the claimant uses or has used to relieve [his] pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii)). Furthermore, "an evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence." *Matejka v. Barnhart*, 386 F. Supp. 2d at 205; *accord Hall v. Berryhill*, 2018 WL 6011167, *4 (W.D.N.Y. 2018) ("[i]t is the function of the ALJ, not the court, to assess the credibility of witnesses") (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 35 (2d Cir. 2013) (summary order)).

16

Here, the ALJ found that Beckles's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but ultimately concluded that his statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17). In reaching this conclusion, the ALJ considered several pieces of evidence.

First, the ALJ noted that objective test results were not consistent with the extent of Beckles's reported functional limitations. (Tr. 16 (citing Tr. 366, 370 (May 2014 spine x-ray showing "transitional L5 vertebral body" and "[o]therwise unremarkable study"), 448 (August 2012 right shoulder x-ray showing "[n]o acute fracture or dislocation," but a "deformity suggestive of prior dislocation), 502 (September 2016 treatment note indicating that x-rays of knees were "normal"), 511 (September 2015 treatment note referencing negative x-rays for right ankle injury))). The ALJ also considered Beckles's noncompliance with treatment (Tr. 15-16 (citing Tr. 473, 502-503)), and that the record showed no diabetes-related hospitalizations and infrequent medication management appointments since he started using an insulin pump (Tr. 16 (citing Tr. 502-49)). In addition, the ALJ noted that Beckles testified that he "died on a table and was in a coma" at Mount St. Mary's Hospital in 2013, although the hospitalization records do not reflect such an occurrence. (Tr. 16). These were appropriate considerations for the ALJ's credibility determination. *See*, *e.g.*, *Garner v. Colvin*, 2015 WL 5537688, *2 (N.D.N.Y. 2015) ("[claimant's] testimony regarding the severity of her symptoms and her functional limitations is inconsistent with her own statements to medical providers as well as the medical signs and findings contained in her treatment records"); *Nicholson v. Colvin*, 2015 WL 1643272, *7 (N.D.N.Y. 2015) ("[t]he ALJ properly considered [p]laintiff's failure to comply with medication

17

treatment as prescribed as a factor weighing against her credibility, particularly because she had continued counsel from her treatment providers to maintain the medication regimen").

Contrary to Beckles's argument, the ALJ considered Beckles's impairments in light of his reported activities of daily living, such as his interest in pursuing law school (Tr. 13, 15, 16 (citing Tr. 54, 482)), and his inconsistent testimony and statements regarding his hobbies, ability to dress, care for personal hygiene, shop, and socialize. (Tr. 13). These were also proper factors for the ALJ to consider, especially because the ALJ did not rely exclusively on these portions of the record in reaching her credibility determination. *See Herrington v. Berryhill*, 2019 WL 1091385, *7 (D. Conn. 2019) ("it is beyond cavil that activities of daily living are an appropriate factor for an ALJ to consider when assessing a claimant's credibility") (collecting cases).

In sum, the ALJ's decision provides an adequate basis for the Court to discern the reasons for the ALJ's credibility determination. *See Brylski v. Astrue*, 2012 WL 1038622, *3 (W.D.N.Y. 2012) ("the ALJ was not required to discuss every credibility factor individually where, as here, the decision is sufficient to allow th[e] [c]ourt to determine the basis for the ALJ's credibility determination"). The ALJ's credibility determination is supported by substantial evidence and remand is not warranted.

## **CONCLUSION**

After a careful review of the entire record, this Court finds that the Commissioner's denial of DIB and SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 18)** is **GRANTED**.

Beckles's motion for judgment on the pleadings **(Docket # 13)** is **DENIED**, and Beckles's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                        *s/Marian W. Payson*
                                                      MARIAN W. PAYSON
                                            United States Magistrate Judge

Dated: Rochester, New York
        August 30, 2019